BENESCH, FRIEDLANDER, COPLAN & ARONOFF, LLP
Michael J. Barrie
Abbey Walsh
1155 Avenue of the Americas, Floor 26
New York, New York 10036
Telephone: (646) 593-7050
Facsimile: (646) 755-3397

*Counsel to CPIF PE I, LLC*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>DMFYD LIC LLC,<br><br>　　　　　　　Debtor. | **Hearing Date: December 18, 2024**<br>**Objection Deadline: December 11 & 16, 2024**<br><br>Chapter 11<br><br>Case No. 24-44740 (JMM)<br><br>(Joint Administration Requested) |
| In re<br><br>DMFYD II LLC,<br><br>　　　　　　　Debtor. | Chapter 11<br><br>Case No. 24-44741 (JMM)<br><br>(Joint Administration Requested) |
| In re<br><br>DMFYD HOLDING LLC,<br><br>　　　　　　　Debtor. | Chapter 11<br><br>Case No. 24-44742 (JMM)<br><br>(Joint Administration Requested) |

**OMNIBUS OBJECTION OF CPIF PE I, LLC TO DEBTORS' MOTIONS AND APPLICATIONS SCHEDULED TO BE HEARD ON DECEMBER 18, 2024**

CPIF PE I, LLC ("CPIF" or "Preferred Investor"), by and through its undersigned counsel, hereby objects to (i) debtor DMFYD II LLC's ("Common Member") Motion for Joint Administration (Case No. 24-44741, ECF 15) (the "Joint Admin Motion"), (ii) debtor DMFYD Holding LLC's ("Holding") and debtor DMFYD LIC LLC's ("Property Owner") Applications to

Retain and Employ The Kantrow Law Group, PLLC as Counsel to the Debtor and Debtor-in-Possession (Case No. 24-44740, ECF 20, Case No. 24-44742, ECF 13) (collectively, the "Kantrow Retention Applications"), (iii) debtor Property Owner's Application for Entry of an Order Authorizing Debtor's Use of Cash Collateral and Providing Adequate Protection to the Secured Creditor (Case No. 24-44740, ECF 25) (the "Cash Collateral Motion"), and (iv) debtor Property Owner's Application Seeking Entry of an Order Authorizing and Approving the Debtor's Post-Petition Amendment to Pre-Petition Loan Documents with Metropolitan Commercial Bank (Case No. 24-44740, ECF 26) (the "Post-Petition Amendment Motion" and together with the Joint Admin Motion, the Kantrow Retention Applications and the Cash Collateral Motion, the "Pending Motions"). In support of this omnibus objection (the "Omnibus Objection"), CPIF respectfully states as follows:

**Preliminary Statement**

1. CPIF files its objections to the Pending Motions as an omnibus objection because the objection to each is, at its base, the same. The person that is currently purporting to control Holding and Property Owner, Scott Barone, is not authorized to exercise such control. And the proposed counsel for Holding and Property Owner, The Kantrow Group, PLLC, was hired by Mr. Barone pursuant to an invalid corporate resolution for each of Holding and Property Owner. As such, none of the relief sought by the Pending Motions is properly before the Court and, as such, should be denied.

2. The Debtors' chapter 11 cases were filed by Scott Barone without due authorization, in bad faith and for no legitimate bankruptcy purpose. The filings were merely a litigation tactic to attempt to thwart CPIF's lawsuit against one of the Debtors, DMFYD II LLC ("Common Member"), filed in Delaware Chancery Court on November 7, 2024. The Debtors have admitted as much in the Cash Collateral Motion, saying "as a direct result of the actions taken

2

by the Preferred Investor, the Debtor and their related entities sought the protection of this Court." Cash Collateral Motion ¶ 18.

3. CPIF has moved to dismiss the chapter 11 cases of Common Member, Holding and Property Owner. *See* Motion of CPIF PE I, LLC to Dismiss Chapter 11 Cases Pursuant to Section 1112(b) of the Bankruptcy Code (Case No. 24-44740, ECF 23, Case No. 24-44741, ECF 19, Case No. 24-44742, ECF 17) (the "<u>Motion to Dismiss</u>"). If the Court grants the Motion to Dismiss, this Omnibus Objection will be moot. However, CPIF is filing the Omnibus Objection in an abundance of caution and without any intent to prejudice the relief sought in the Motion to Dismiss.

**Factual Background**

4. CPIF is the holder of 100% of the preferred interest in Holding and Common Member is the holder of 100% of the common interest in Holding. Holding, in turn, is the sole member of Property Owner. Property Owner is the tenant under a ground lease with respect to certain real property commonly known as 9-03 44th Road, Long Island City, New York 11101. The following is a graphical depiction of the Debtors' organizational structure:



5.      Approximately one month before the filing of these chapter 11 cases, CPIF sent a "Changeover Event Notice" to Common Member, informing Common Member of the occurrence of a Changeover Event under Limited Liability Company Agreement of DMFYD Holding LLC dated as of April 21, 2021 (the "Holding LLCA").  A copy of the Changeover Event Notice is attached hereto as **Exhibit A** and a copy of the Holding LLCA is attached hereto as **Exhibit B**.  The Changeover Event was the failure of Holding to redeem CPIF's $15,000,000 preferred investment in Holding (plus other amounts due to CPIF under the Holding LLCA) by the Mandatory Redemption Date, which occurred on April 21, 2024 as per Section 3(A)(i) of the Second Amendment to Limited Liability Company Agreement of DMFYD Holding LLC (the "Holding LLCA Second Amendment").[1]  A copy of the Holding LLCA Second Amendment is annexed hereto as **Exhibit C**.

6.      Section 8.4(a) of the Holding LLCA, which is entitled "Rights Following a Changeover Event", provides:

> Notwithstanding Section 4.1 or any other provision of this Agreement to the contrary, upon the occurrence of a Changeover Event and the delivery by Preferred Investor to the Managing Member of written notice thereof (a "**Changeover Event Notice**") and so long as no Preferred Investor Recognition Default (as defined in the Recognition Agreement exists[)], Preferred Investor shall be entitled to cause each of the events set forth below to occur and/or take any of the following actions…(iv) Preferred Investor, individually, or together with any designee appointed by Preferred Investor to act as Managing Member, shall have the exclusive right, power and authority to make any and all decisions in its sole discretion and take any actions (including, without limitation, any Major Decisions) on behalf of or with respect to [Holding] and each of its Subsidiaries, provided, however, that the duties and obligations of the Managing Member to the other Members shall not be assumed by Preferred Investor; (v) Common Member will, automatically and without any further action by Preferred Investor or any other Person, cease to be the Managing Member, and Preferred Investor shall have the right, power and authority in its sole and absolute discretion to terminate any management agreements with Common Member and its Affiliates and Preferred Investor or its designee will become the Managing Member…

---

[1] Changeover Event is defined to mean, in relevant part, "the failure (regardless of the availability of funds) of the Company to pay to Preferred Investor the Required Redemption Amount and to redeem the Preferred Interest on the Mandatory Redemption Date."  Holding LLCA, § 1.1.

7. Based on the foregoing, after the delivery of the Changeover Event Notice, CPIF automatically became the Managing Member of Holding and was vested with sole authority over Holding and Property Owner, a subsidiary of Holding.[2]

8. Common Member did not respond to the Changeover Event Notice or dispute that a Changeover Event occurred. However, it refused to hand over management of Holding and Property Owner to CPIF. To compel Common Member to comply with the Holding LLCA and the Changeover Event Notice, approximately one week before the Debtors filed the chapter 11 cases, on November 7, 2024, CPIF brought an action against Common Member in Delaware Chancery Court seeking declarations that, as a result of the Changeover Event Notice: (i) Common Member was validly removed as manager of Holding and (ii) CPIF is the Managing Member of Holding.

9. On November 13, 2024, Scott Barone signed a Resolution of the Board of Managers of DMFYD LIC LLC and a Resolution of the Board of Managers of DMFYD Holding LLC (collectively, the "Resolutions") authorizing Property Owner and Holding, respectively, to file bankruptcy petitions and to retain The Kantrow Law Group, PLLC ("Kantrow") as bankruptcy counsel. *See* Case No. 24-44740, ECF 2; Case No. 24-44742, ECF 2. In each of the Resolutions, Mr. Barone represented that he was the "managing member and shareholder of the limited liability company". *Id.*

10. On November 14, 2024, Barone and Kantrow caused each of Common Member, Holding and Property Owner to file petitions for relief under chapter 11 of the Bankruptcy Code. Thereafter, Barone and Kantrow filed the Pending Motions.

---

[2] The Holding LLCA defines Managing Member as "initially Common Member, provided, that if for any reason Common Member ceases to be the Managing Member pursuant to the terms hereof (including pursuant to the occurrence of a Changeover Event), the term "Managing Member" shall thereafter mean Preferred Investor…" Holding LLCA, § 1.1.

5

11. Barone filed the bankruptcy cases as a means of staying the Delaware Chancery Court action. *See* Cash Collateral Motion ¶ 18. In the Cash Collateral Motion, Property Owner characterizes CPIF's actions to enforce its rights under the Holding LLCA as an attempt to receive "a windfall insofar as they would have taken control of all of the assets of the Debtor." *Id.* The Motion does not explain how this would result in CPIF receiving a windfall. All CPIF seeks by its Chancery Court action is the benefit of its bargain under the Holding LLCA – i.e., the right to be recognized as the Managing Member of Holding due to the occurrence of the Changeover Event.

**Omnibus Objection - Neither Barone nor Kantrow are Authorized to Seek Relief on Behalf of Property Owner or Holding**

12. When a bankruptcy petition is filed *ultra vires* by a person or entity lacking authority to do so, the bankruptcy court has no jurisdictional authority over the putative debtor. *See In re S. Elegant Homes, Inc., No. 09-02756-8-JRL*, 2009 Bankr. LEXIS 1478, at *2 (Bankr. E.D.N.C. June 9, 2009) (referencing *Price v. Gurney*, 324 U.S. 100, 106, 65 S. Ct. 513, 89 L. Ed. 776 (1945); *In re Gen-Air Plumbing & Remodeling, Inc.*, 208 B.R. 426, 430 (Bankr. N.D. Ill. 1997)) ("A bankruptcy court can establish no jurisdiction over a petitioning corporation unless those individuals asserting the right to act on behalf of the corporation do in fact have such authority under provisions of state law and corporate governance instruments."). Courts have likewise made clear that a corporation's filings made subsequent to an unauthorized bankruptcy petition are themselves *ultra vires* and subject to denial. For example, in *In re JJ Arch LLC*, 663 B.R. 258 (Bankr. S.D.N.Y. 2024), the Bankruptcy Court for the Southern District of New York found that the debtor's proposed plan, and the transactions contemplated thereunder, could not be proposed "in good faith and not by any means forbidden by law" until a court had "conclusively found" that that the bankruptcy petition had been filed with the requisite corporate authority. *In*

*re JJ Arch LLC*, 663 B.R. at 287. There, the court stated that "the propriety of these transfers [of property under the Plan]—much like the propriety of the Plan—depends entirely upon whether Mr. Simpson possesses the legal right to direct the subsidiaries controlled by the Debtor." *Id.* at 288. Furthermore, in *In re Gen-Air Plumbing & Remodeling*, 208 B.R. 426, 432-33 (Bankr. N.D. Ill. 1997), the bankruptcy court denied a putative debtor's request to retain legal professionals when the underlying bankruptcy petition was filed without corporate authority. *See id.* (denying a debtor's motion to retain a law firm as "unauthorized" because the petition filer, who had filed the petition without authority, also "lacked the authority to hire an attorney to represent the [debtor] in the bankruptcy filing.").

13. These cases make clear that the Pending Motions cannot be granted because each has been filed without due authorization. Mr. Barone is not a member of Holding or Property Owner, much less the Managing Member, and had no authority to sign the Resolutions. *See* Case No. 24-44741, ECF 13, *Debtor's Local Rule 1007-4 Affidavit* ¶ 1 ("[Common Member is a holding company which holds 100% of the membership interest in [Holding], also a debtor before this Court, which in turn holds 100% of the membership interest in the operating company, [Property Owner], which is also a debtor before this Court."); Holding LLCA, Preamble (defining Members as Preferred Investor and Common Member).³

14. Mr. Barone acknowledged the falsity of the Resolutions in the Debtor's Local Rule 1007-4 Affidavit for Holding (Case No. 24-44742, ECF 11) (the "<u>Holding Rule 1007 Affidavit</u>") and the Debtor's Local Rule 1007-4 Affidavit for Common Member (Case No. 24-44741, ECF

---

³ Furthermore, although the Resolutions purport to be resolutions of the boards of managers for these entities, Holding and, upon information and belief, Property Owner are member managed – neither has a Board of Managers. See, e.g., Holding LLCA, § 4.1(a) ("Subject to the provisions of Article III, this Article IV, Article VIII and the other provisions of this Agreement, the Managing Member shall have the right, power and authority and the duty to manage the day-to-day operations and affairs of [Holding] in accordance with the terms of this Agreement and applicable laws and regulations.").

13) (the "Common Member Rule 1007 Affidavit"), both of which are sworn statements signed by him.

15. The Holding Rule 1007 Affidavit states: "[t]he Debtor is a holding company which holds 100% of the membership interest in the operating company, [Property Owner]". Holding Rule 1007 Affidavit ¶ 1. This confirms that Mr. Barone's representation in the Property Owner Resolution that he is the "managing member and shareholder" is false.

16. The Common Member Rule 1007 Affidavit states: "[t]he Debtor is a holding company which holds 100% of the membership interest in [Holding]".[4] Common Member Rule 1007 Affidavit ¶ 1. This confirms that Mr. Barone's representation in the Holding Resolution that he is the "managing member and shareholder" is false.

17. As such, in addition to the voluntary petitions filed by Holding and its wholly owned subsidiary, Property Owner, not duly authorized in accordance with their organizational documents, the relief sought by Holding and Property Owner in the Pending Motions is also unauthorized and should be denied.[5]

A. **The Joint Admin Motion**

18. The Joint Admin Motion requests that Common Member, Holding and Property Owner's cases be jointly administered with one another for procedural purposes. While the Debtors are affiliates of one another, joint administration of Common Member's chapter 11 case with the Holding and Property Owner chapter 11 cases is not appropriate here. Effective as of October 15, 2024, upon CPIF's sending Common Member the Changeover Event Notice, CPIF

---

[4]   This statement entirely neglects the fact that CPIF owns 100% of the Preferred Interest in Holding.
[5]   As noted above, CPIF has moved for dismissal of the pending chapter 11 cases. However, CPIF, as the actual Managing Member of Holding, would be willing to cure the defects in Property Owner's chapter 11 petition and authorizing resolution and allow its case to continue to permit a value-maximizing sale of the property. CPIF does not object to Property Owner's bankruptcy *per se*, it objects to the unauthorized manner in which the case was commenced and has continued to date.

became the Managing Member of Holding, and Holding is the Managing Member of Property Owner. CPIF does not agree to joint administration of Holding's and Property Owner's chapter 11 cases with Common Member's case.

19. In addition to Common Member being separately managed from Holding and Property Owner, there is no benefit or efficiency to be gained from jointly administering Common Member's case with Holding and Property Owner. Common Member has no creditors (other than CPIF), no revenue stream and no assets other than the common interests in Holding. It has sought no relief from the Court other than joint administration and to retain Kantrow (which request should also be denied, as discussed below).

20. As such, CPIF objects to Common Member's chapter 11 case being jointly administered with Holding and Property Owner.

B. **The Kantrow Retention Applications**

21. Each of the Debtors seek to retain Kantrow as bankruptcy counsel. CPIF objects to Kantrow's retention by Holding and Property Owner.

22. First, the Kantrow Retention Applications were signed by Scott Barone as "Managing Member" of Property Owner and Holding. As set forth above, Scott Barone is not the Managing Member of either Property Owner or Holding. As such, the Kantrow Retention Applications were not properly authorized or submitted to the Court.

23. Second, Kantrow's engagement by Holding and Property Owner was purportedly authorized by the Resolutions, but, as discussed above, the Resolutions themselves were not proper. And, therefore, Kantrow has not been properly engaged by these Debtors.

24. Third, Kantrow unquestionably has knowledge of the falsity of Barone's continued representation that he is the Managing Member and shareholder of Holding and Property Owner. Kantrow filed the Holding Rule 1007 Affidavit that states that Holding is the sole shareholder of

9

Property Owner. Kantrow also filed the Joint Admin Motion, which states that "[Property Owner] is owned entirely by [Holding]. [Holding] is owned entirely by [Common Member]." Joint Admin Motion ¶ 5. While these statements omit the fact that CPIF is the preferred shareholder of Holding, they also demonstrate that Kantrow has actual knowledge that Mr. Barone did not have the authority to sign the Resolutions and engage Kantrow on behalf of Holding and Property Owner.

25. Furthermore, Kantrow also knows that the Common Member and Holding chapter 11 cases were filed for an improper purpose – to cause unnecessary delay of the Delaware Chancery Court litigation. *See* Cash Collateral Motion ¶ 18.

26. In spite of all this, Kantrow filed the Kantrow Retention Applications signed by Mr. Barone as Managing Member. Even if Common Member and Kantrow are resisting the inevitability of the fact that CPIF is the Managing Member of Holding,[6] Kantrow certainly knows that Barone is not the Managing Member of Holding. By filing these false statements, Kantrow is aiding and abetting Barone's fraud on this court, which conduct by Kantrow is sanctionable under Rule 9011(c). As such, the Kantrow Retention Applications should be denied.

27. To the extent that Holding's and Property Owner's cases are not dismissed, CPIF is prepared to promptly file an application to retain Benesch Friedlander Coplan & Aronoff LLP as counsel for Holding and Property Owner.

C. **Cash Collateral Motion and Post-Petition Amendment Motion**

28. Property Owner filed (i) the Cash Collateral Motion seeking entry of a cash collateral order that would permit it to use the cash collateral of its secured lender, Metropolitan Commercial Bank, in exchange for adequate protection and (ii) the Post-Petition Amendment Motion seeking authority to enter into an amendment to its credit agreement with Metropolitan

---

[6] Although the fact that neither Mr. Barone nor Kantrow have stated in the pleadings that Common Member is the Managing Member of Holding belies this resistance.

Commercial Bank to extend the maturity date of the loan. While CPIF does not object to the substance of the relief being sought in these applications, CPIF objects to the fact that each of these Pending Motions was presented to the Court by Kantrow, who is not an authorized representative of Property Owner. Furthermore, the Post-Petition Amendment Motion seeks approval of an amendment signed by John Silviano, who purports to be a member of Property Owner. As established above, the only member of Property Owner is Holding. As such, the amendment cannot be approved unless properly executed by Holding, as the member of Property Owner, or another representative of Property Owner, as may be authorized by CPIF as Managing Member of Holding. For these reasons, CPIF requests that the Court deny the Cash Collateral Motion and the Post-Petition Amendment Motion without prejudice to the Property Owner resubmitting its request for such relief in an authorized manner.

29. CPIF would be willing to execute the post-petition amendment as the Managing Member of Holding, which is the Managing Member of Property Owner, provided that the order approving the amendment provides that Metropolitan Commercial Bank may not exercise any rights and remedies under the loan agreement absent further order of the Court providing relief from the automatic stay.

**WHEREFORE**, for the reasons set forth above, the Court should (A) deny: (i) Common Member's Joint Admin Motion; (ii) Holding's and Property Owner's Kantrow Retention Applications; (iii) the Cash Collateral Motion (without prejudice); and (iv) the Post-Petition Amendment Motion (without prejudice) and (B) grant such other and further relief as is appropriate.

Dated:  December 11, 2024

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP

 /s/Abbey Walsh
Michael J. Barrie
Abbey Walsh
1155 Avenue of the Americas, Floor 26
New York, New York 10036
Telephone: (646) 593-7050
Email: mbarrie@beneschlaw.com
            abbey.walsh@beneschlaw.com

*Counsel to CPIF PE I, LLC*